**SMITH, Gdn., Plaintiff, v. MERKLE et, Defendants.**

Probate Court, Cuyahoga County.

No. 459085. Decided September 10, 1956.

Clarence J. Oviatt, Robert E. Sweeney, for petitioners.
Miller, Davis & Folk, for defendants.

## OPINION

By MERRICK, J.

This matter comes before the Court on a Petition to Vacate an Order

for Allowance of Attorney Fees for services alleged to have been performed for the benefit of the estates of three minor wards of the plaintiff herein and an allowance for maintenance and support.

Though it may burden the body of this opinion, a recitation of some of the history and facts prior and incident to entry of the order of December 18, 1952, becomes necessary. This is the order sought to be vacated.

Mary E. Howard died in 1949. By the terms of her will, after certain specific bequests, a life estate was left to her mother with remainder to nine persons, three of whom were the children of the plaintiff, all three of whom were minors at the time of the probate of the will. The life-tenant died in 1952 and distribution was attempted.

In one of the specific bequests there was devised to Harry J. Smith for life with remainder to his four children a residence in Lakewood, Ohio. He is the husband of the plaintiff herein. The devise contained language which subjected the taking to a mortgage executed by the testatrix during her lifetime.

Shortly after the probate of the will, Harry and Jennie Smith contacted Edward J. Burke and Robert Merkle. They will be referred to as the attorneys in the balance of this opinion. A contract of employment was drawn by the attorneys and executed mutually. Among other things, it provided that the Smiths were engaging the attorneys to contest the will and were to receive as fees, one-half of what might be recovered by a will contest action over and above what the will provided for them. The contract further provided that if the attorneys would succeed in securing payment of part or all of the mortgage from the estate they would be entitled to payment of one-half that sum. There was a further provision that if the attorneys were unsuccessful in securing any additional amount they were to be paid a fair and reasonable compensation for their services. There was a further proviso that Anna G. Smith was to make a will, giving to the minor children the same share which they were obtaining under the will which was to be contested in the event of a successful outcome of such contest.

The will was not contested and no part of the mortgage was paid by the estate.

The estate was administered with some slight delays. In May of 1950 a Petition for Declaratory Judgment was filed seeking a determination of the rights and liabilities of the estate and all others concerned as to the mortgage. The minors were parties and a guardian ad litem was named to represent them and an Answer was filed on their behalf. This action was later dismissed when the bank secured from the life-tenant an assumption agreement and a commitment to make payments on the mortgage.

The attorneys represented the parents of the minors in the negotiations for this assumption, which, of course, ended up with no gain to themselves. There was also an adoption proceedings in which the attorneys performed valuable services for the parents.

In February, 1952, the parents were appointed legal guardians for the children. The attorneys handled the details of the application and acted as attorneys for the fiduciary in securing and posting bond.

Previous to the transfer of the stocks referred to herein, the parents had paid to the attorneys the sum of $520.00, in cash, as fees and expenses. Throughout this trial, the parents have contended that this was in full payment for all services rendered, contending that the negotiation and settlement of the mortgage question was paid to other counsel out of the estate and trust.

At the closing of the Howard trust, there was launched a plan by the attorneys to secure for themselves a substantial fee. They had been unsuccessful in securing anything for the Smiths out of the Howard estate. There was a distribution in kind to be made to the minor children under the Howard will and trust and the Smiths had obtained possession of the real estate.

In addition to a personal injury settlement and some small income from the estate, there was distributed to the minors out of the Howard trust on December 18, 1952, the following corporate shares in kind:

567 shares W. T. Grant Co. valued at that date at $33.00 per share according to the inventory prepared by the attorneys, or a total value of $18,711.00.

Simultaneously, there was distributed to Harry Smith, one of the parents, 70 shares of the same corporate stock of the value of $2,310.00.

The stock certificates were distributed to the attorneys who called a meeting in the office of one of them on December 16, 1956, to consummate the distribution. The testimony varies and is in some instances in direct opposition as to what was said at this meeting which lasted several hours. The parents contend that when the question of fees was discussed, they objected to paying anything further. The attorneys testified that all was explained fully and fairly and agreed to by the parents. The parents were vehement in their denials that there ever was any mention of a claim to be made by the guardians for the support and maintenance of the wards. The parents contend that they had confidence in the attorneys and trusted them to the extent that they signed all papers submitted.

A perusal of the record and exhibits discloses that the following course was pursued:

Seventy shares of the stock was endorsed by one parent to the attorneys in payment of fees. This was his own property and is not involved in this litigation. This represented a value of $2,310.00.

An amended inventory was prepared and filed in the guardianship representing that 567 shares of the stock had been received by the guardian into the wards' estate.

An application was prepared by the attorneys on behalf of the guardian which represented that the guardian and her husband had not been able to maintain and support their minor children for a period of three years and that a reasonable allowance for such support would be 120 shares of the stock. No explanation is contained in the application as to whether the children were maintained by others or on borrowed money or by any other method.

The same application further states that legal services had been rendered to the minors for three years in connection with the estate of Howard and the interests of the wards therein and in connection with

the guardianship and other matters. A purported exhibit to set forth an itemization is merely a general claim for 300 hours of legal services. It is interesting to note that most of the claim is for services to the minors in the Howard estate. It might be well to pause here and observe that if the purpose of the original contract for legal services had been fulfilled and the Howard will found not to be a last will and testament, that the minors would have received nothing. The application asked for 60 shares as attorney fees.

The application further states that consents of the parents and the three minors have been received and that they waive notice. Their signatures are attached to such waiver and consent.

There was no formal hearing on the matter and the Probate Court approved the application and a journal entry which had been prepared by the attorneys was approved by the Court.

The certificates were split by the corporation and the plan carried into execution. All in all, the attorneys received 70 shares from one parent and the following shares from the guardianship:

by direct tranfer from the guardian to the attorneys by way of fees for services alleged to have been rendered to the wards—60 shares

by transfer from the guardian to the parents to the attorneys for maintenance and support of the wards allowed the parents and then endorsed over to the attorneys for fees for services rendered to the parents —120 shares

To recapitulate, the attorneys received 70 shares from one parent for services rendered, or the equivalent of $2,310.00; direct from the guardianship for services rendered, 60 shares, or the equivalent of $1,980.00; from the guardianship to the parents for maintenance and support of the wards and then by endorsement to the attorneys for services rendered the parents, 120 shares, or the equivalent of $3,960.00, or a grand total of $8,250.00 in addition to cash payments of $520.00, which are referred to in the brief of the attorneys as "token payments."

There was no guardian ad litem appointed for the wards in the face of the adverse claim for maintenance and support and fees to be diverted to the attorneys. Stock of the value of $5,940.00, the property of the wards, was diverted to the attorneys in this application and order.

A long trial was had and the testimony of all concerned was taken. This Court can come to but one conclusion and that is that this unusual device of transfers and allowances was resorted to in a plan to take out of the guardianship funds sufficient to pay the fees claimed by the attorneys against the parents. In the opinion of this Court they rendered very little by way of services in the guardianship and should have looked to the parents directly for whatever fees were owed by them.

The subterfuge of the allowance for maintenance to secure a transfer of stock out of the guardianship was done under such circumstances as to constitute a fraud upon the wards. The entire plan was conceived by the attorneys and carried out swiftly with the passive consent of the parents who maintain that such was not their intent and purpose. Perhaps the parents might be open to some criticism by this Court for carelessly lending aid to the plan whether they knew of its full import or otherwise.

However, the decision in this matter must revolve around the failure of the attorneys, or the guardian, to secure the appointment of a guardian ad litem when the plan was presented to the Court. The children are now objecting through the medium of this petition by their guardian to void the entire transaction.

Equity looks with extreme jealousy on transactions between parties who stand in a confidential relationship. Between such parties. a transfer of property will be set aside, unless the person who benefited can show that utmost good faith was exercised, and that the benefit was conferred with a full knowledge of all the circumstances. **Peterson v. Mitchener, 79 Oh Ap 125.** If a party having an infant under his influence and control, against whom he is prosecuting a suit in which no defense is made for the infant, intends to insist on the rights of an ordinary adversary, he ought first to surrender the advantages arising from his fiduciary or quasi-fiduciary character. **Long v. Mulford, 17 Oh St 485.**

In a suit or proceeding in which the guardian has an adverse interest, the Court shall appoint a guardian ad litem to represent such minor. **Sec. 2111.23 R. C.** In all suits in which infants are parties defendant, it is the duty of the Court to carefully safeguard the rights and interests of such infants and it is also the duty of a guardian ad litem to ascertain the legal and equitable rights of his ward and to bring those rights to the attention of the Court for consideration and decision. **Bennet v. Fleming, 105 Oh St 352.**

Failure to appoint a guardian ad litem for a minor defendant renders the judgment erroneous as against the minor. **Robinson v. Gatch, 85 Oh Ap 484.**

Consolidating the theories advanced in this opinion, this Court determines that the entire proceeding which transferred the stock in question out of the guardianship, by whatever device, was a fraud upon the wards herein and was done without proper notice to them and was further done without the appointment of a guardian ad litem.

There is no doubt but what the attorneys planned this entire procedure for their own gain as against the minors, that the claim for maintenance and support was a fabrication, made to implement the ultimate accomplishment and that the claim for attorney fees was improperly presented and so closely tied into the balance of the transaction as to become a part thereof and be placed in the same category.

It is the conclusion of this Court that the attorneys secured an undue advantage of the wards herein and did so by their own devices which were contrary to law and the principles of equity and should be required to make the estate of the wards whole by one of two processes:

1. By returning to the guardianship 180 shares of the same W. T. Grant Co. stock, together with all dividends, cash or stock paid on such stock since December 18, 1952, or

2. By returning to the guardianship cash in the amount of $5,940.00 with interest at 6% from December 18, 1952.

It is the further order of this Court that the guardian may elect to accept which ever of these two orders will net the greater advantage to the estate. A journal may be prepared according to this finding.